17 F.3d 395
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Phyllis G. KYLE, Plaintiff-Appellee,
v.
CAMPBELL SOUP COMPANY, Defendant-Appellant.
 No. 92-16125.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1993.
Decided Jan. 7, 1994.
 
 Before: ALARCON, LEAVY and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Campbell Soup Company appeals from the judgment awarding Phyllis Kyle damages in the amount of $5,000.00 resulting from violations of 42 U.S.C. Sec. 2000e and the California Fair Employment and Housing Act, Cal.Gov't Code Sec. 12900, and a permanent injunction prohibiting Campbell Soup from discriminating against Kyle on the basis of her gender with respect to the terms and conditions of her employment, job assignments, shift assignments, training availability, and advancement. Campbell Soup contends that the district court erred (1) in finding that Kyle had proven intentional sex discrimination, (2) in finding that Campbell Soup did not prove that it would have taken the same actions had it not taken Kyle's sex into consideration, (3) in issuing injunctive relief, (4) in issuing an overly broad injunction, and (5) in issuing a permanent injunction. We affirm because we conclude the district court's findings were not clearly erroneous and that the court did not abuse its discretion in fashioning or issuing the injunction.
 
 
 3
 I. The district court's finding that Campbell Soup intentionally discriminated against Kyle on the basis of her gender was not clearly erroneous, because the record contains facts which support that finding.
 
 
 4
 The district court concluded that Campbell Soup intentionally discriminated against Kyle and rejected Campbell Soup's evidence of business reasons as pretextual. The court noted that although Kyle had been told before she applied that the successful bidder for the Bosley position would assume overhaul duties, those duties had not been assigned to her. The court believed Lee Clark and Dorothy Graham when they testified that supervisor Bob Rains had stated that women were not "mechanically inclined" and were not "logical." The court found that the testimony of these witnesses supported Kyle's assertion that she had been treated differently from male mechanics by Rains, that Kyle was routinely passed over for overhaul assignments, and that she was told to perform the more menial task of overseeing the production line ("watching the floor"), while male mechanics were assigned to do overhaul work. The court also found that overhaul experience was an important prerequisite to a promotion for a mechanic in Kyle's position. This finding was supported by the testimony of Donald Ramsey, retired lead mechanic for Campbell Soup, who stated that it was desirable that lead mechanics possess overhaul experience. Based upon these findings, the district court concluded that Campbell Soup had discriminated against Kyle based upon her gender. Cf. Harris v. Forklift Sys., 62 U.S.L.W. 4004, 4005 (U.S. Nov. 9, 1993) ("keep[ing] [women] from advancing in their careers" is sufficient injury to precipitate a Title VII civil rights case).
 
 
 5
 Campbell Soup contends that the court's findings are clearly erroneous. First, Campbell Soup contests the district court's finding that its legitimate business reasons were pretexts for sex discrimination. In so arguing, Campbell Soup presents its own interpretation of the facts. Campbell Soup does not, however, demonstrate that the evidence relied upon by the district court was insufficient. Campbell Soup merely asserts a different view of the events that transpired. However, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. Bessemer City, 470 U.S. 564, 574 (1985).
 
 
 6
 Second, Campbell Soup directly contests the determination that Kyle was intentionally discriminated against by asserting that she was not qualified to do the overhaul work that was denied her. Campbell Soup argues that it is not discrimination to decline to assign work to an unqualified employee. It asserts that the district court's finding that Kyle was "admittedly qualified" was clearly erroneous because Kyle sought the transfer to obtain overhaul experience. This argument is weakened by the undisputed fact that, after the filing of this action, she was given several multi-week overhaul assignments. Furthermore, Kyle's lack of overhaul experience does not demonstrate that she was not qualified to perform overhauls. She was a mechanic with many years of experience at Campbell Soup. The fact that she was eventually assigned to do overhaul demonstrates that she possessed the skills to handle such work. Campbell Soup's argument that she was not qualified was simply not credited by the district court. We must defer to the district court's determination of credibility. See id. at 574.
 
 
 7
 Finally, Campbell Soup argues that Kyle was not discriminated against because Campbell Soup gave her the shift for which she applied. Campbell Soup contends that this position did not have specific work duties, and that Kyle's lack of overhaul assignments did not indicate that she had not been awarded the position for which she bid. This contention is contrary to the fact that Kyle was told before she applied that the open position was the "Bosley" job and would include overhaul work. The district court's finding of sex discrimination is supported by evidence in the record and is therefore not clearly erroneous.
 
 
 8
 II. The district court's finding that Campbell Soup would not have taken the same actions had it not considered Kyle's gender was not clearly erroneous because the facts in the record support that finding.
 
 
 9
 In a Title VII case, once a plaintiff has proven that gender was a motivating factor in the defendant's decisions, the defendant may avoid liability "by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account." Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989). The district court found that Campbell Soup failed to prove this affirmative defense. Campbell Soup contends that this finding was clearly erroneous. It argues that because Kyle was not qualified to perform overhauls, it would have taken the same actions regardless of her gender.
 
 
 10
 However, as discussed above, the record supports the district court's finding that Kyle was qualified to perform overhaul work. Moreover, the district court credited the testimony of witnesses who stated that Kyle was treated differently from men. This evidence supports the district court's conclusion that Campbell Soup failed meet its burden of persuading the court that its actions were not gender motivated. Although Campbell Soup presents its own view of the facts, the district court's decision to adopt an alternative view was not clearly erroneous. See Anderson, 470 U.S. at 573-74.
 
 
 11
 III. The district court did not abuse its discretion by issuing an injunction because there is evidence of a danger of recurrent violations.
 
 
 12
 Campbell Soup contends that the district court abused its discretion in awarding injunctive relief because no evidence of continuing gender discrimination was presented. Injunctive relief is appropriate where there is a reasonable expectation that the wrong will be repeated. United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953). Campbell Soup reasons that because Rains and the supervisors who ratified his conduct are no longer employed by the company, there is no evidence of a reasonable expectation that the wrong will be repeated.
 
 
 13
 In support of this position, Campbell Soup cites Spencer v. General Elec. Co., 894 F.2d 651 (4th Cir.1990). In Spencer, the Fourth Circuit held that the district court's failure to issue an injunction to prevent future discrimination in the workplace was not an abuse of discretion because the offending supervisor had been fired. Id. From this holding, Campbell Soup reasons it is an abuse of discretion to issue an injunction banning future discrimination where the evidence shows the offending supervisors no longer work for the company. We disagree.
 
 
 14
 The fact that the Fourth Circuit found that the district court did not abuse its discretion in Spencer does not compel the conclusion that the granting of an injunction in this case was an abuse of discretion. "[A] district court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the facts." United States v. Rahm, 993 F.2d 1405, 1410 (9th Cir.1993). "To succeed in [an] attack on the injunction, [an appellant] must show that there was no reasonable basis for the district court's decision." Transgo, Inc. v. AJAC Transmission Parts Corp., 768 F.2d 1001, 1021-22 (9th Cir.1985), cert. denied, 474 U.S. 1059 (1986). Here, the district court based its determination on a reasonable assessment of the facts. Kyle testified that even after this action was filed she was still assigned to "watch the floor" while male employees made repairs to equipment. Thus, there was evidence of continuing discrimination against her. In light of this testimony and the district court's finding that she had been discriminated against in the past, there was no abuse of discretion in finding that there "exist[ed] some cognizable danger of recurrent violation," and that injunctive relief was warranted. W.T. Grant, 345 U.S. at 633.
 
 
 15
 IV. The district court did not issue an overbroad injunction because it was tailored to the specific facts of this case.
 
 
 16
 Campbell Soup contends that the district court's injunction merely enjoins it to "obey the statute," and thus is overbroad. Blue Br. at 46-47. The injunction states:
 
 
 17
 Campbell Soup Company, its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with them, are permanently enjoined and restrained from discriminating, either directly or indirectly, against plaintiff by reason of her gender with respect to the terms and conditions of her employment; this prohibition includes a requirement that with respect to the conditions and opportunities available to defendant's employees for job assignments, training availability and advancement, plaintiff be accorded the same consideration, treatment and ability to compete as are accorded to similarly situated and qualified male employees.
 
 
 18
 ER, CR 100 at 3.
 
 
 19
 Campbell Soup cites Davis v. Richmond, Fredericksburg & Potomac R.R. Co., 803 F.2d 1322 (4th Cir.1986), for the proposition that a district court may not simply enjoin a party to obey a statute. In Davis, the Fourth Circuit found that an injunction prohibiting a party from "committing further violations of Title VII," was overly broad. Id. at 1328. Enjoining specific actions, however, was deemed appropriate. Id.
 
 
 20
 Here, the district court specifically enjoined Campbell Soup from failing to treat Kyle with the same consideration given male employees with respect to training availability and work experience. The district court did not abuse its discretion in so enjoining Campbell Soup.
 
 
 21
 V. The district court did not abuse its discretion when it issued a permanent injunction.
 
 
 22
 Campbell Soup contends that the district court abused its discretion by issuing a permanent, as opposed to a temporary, injunction. In support of its position, Campbell Soup cites EEOC v. Wooster Brush Co. Employees Relief Ass'n, 727 F.2d 566 (6th Cir.1984). The Sixth Circuit in Wooster Brush Co. held that where the parties had agreed to an injunction of limited duration, the district court had the discretion to determine how long it should be. Id. at 577. Campbell Soup essentially argues that because the district court had the discretion to order an injunction of limited duration, it was an abuse of discretion not to do so. Campbell Soup does not contest that it was within the court's discretion to order a permanent injunction. Rather, it argues that such an injunction was inappropriate in this case, especially because "the accused supervisors were no longer employed" by Campbell Soup. Blue Br. at 47.
 
 
 23
 However, this argument does not demonstrate that the district court abused its discretion by "bas[ing] its decision on an erroneous view of the law or a clearly erroneous assessment of the facts." United States v. Rahm, 993 F.2d at 1410. Rather, it merely shows that Campbell Soup did not agree with the way the court exercised its discretion.
 
 
 24
 Campbell Soup also argues that the district court did not understand that it had the discretion to issue an injunction of limited duration, citing a letter sent to both parties from the district court. There, the court asked, "What is the logic of prohibiting a defendant from violating the law for a limited time period and then, in effect, saying it's o.k. to do this after 90 days?" ER, letter accompanying CR 100 at 1. The phrasing of this question suggests that the district court understood quite clearly that it could issue an injunction of limited duration, but that the court did not think that it was advisable to do so.
 
 
 25
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3